**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ROGER THOMAS CASH,         )    No. CV 10-7606-CW
                         )
         Petitioner,   )    DECISION AND ORDER
                         )
    v.                )
                         )
A. FAKHOURY (Warden),    )
                         )
         Respondent.   )
_____)

For reasons stated below, the petition for habeas corpus relief is denied and this action is dismissed with prejudice.

**I.   PROCEDURAL HISTORY**

The pro se petitioner, a prisoner in state custody, challenges a conviction in California Superior Court, Los Angeles County, Case No. NA077650. [Petition at 2.] On June 26, 2008, a jury convicted Petitioner of robbery and carjacking, and found "true" allegations that, in each offense, a principal was armed with a firearm. [Clerk's Transcript ("CT") at 89-91.] On August 21, 2008, the court sentenced Petitioner to a six-year term and a one-year enhancement for robbery, and a concurrent five-year term and one-year enhancement for

1

carjacking, for a total sentence of seven years.  [CT at 106-109.]

Petitioner appealed, and his appointed appellate counsel filed a brief pursuant to <u>People v. Wende</u>, 25 Cal. 3d 436,  158 Cal. Rptr. 839 (1979), asking the court of appeal to independently review the record. [Lodged Document ("L. Doc.") 3.]  The California Court of Appeal affirmed the judgment of conviction in an unpublished opinion filed May 27, 2009.  [No. B210706, L. Doc. 5.]  It does not appear that Petitioner filed a petition for review in the California Supreme Court on direct review.

Petitioner filed a habeas petition (dated December 27, 2009), which the California Supreme Court summarily denied, without comment or citation, on June 28, 2010.  [No. S179139, L. Docs. 6-7.] Meanwhile, Petitioner filed a habeas petition (dated June 14, 2010), which the superior court denied on June 25, 2010, in an order stating, in its entirety, as follows: "The Court has read and considered petitioner's petition for a writ of habeas corpus.  The Court does not find the petition meritorious.  The petition is denied." [L. Docs. 8-9.]  Petitioner then filed a habeas petition (with a proof of service dated July 6, 2010), which the court of appeal denied on July 15, 2010, in an order stating, in its entirety, as follows:

> The petition for writ of habeas corpus filed herein
> July 12, 2010 has been read and considered.  The court has
> also examined the file in proceeding number B210706,
> petitioner Cash's direct appeal from the judgment in Los
> Angeles Count Superior Court case number NA077650.  The
> petition is denied.

[No. B225690, L. Docs. 10-11.]  Finally, Petitioner filed a petition for review of the court of appeal's denial (with a proof of service

dated July 26, 2010), which the state supreme court summarily denied, without comment or citation, on September 15, 2010. [No. S184790, L. Docs. 12-13, and copy of denial order attached to Petition.][1]

The present Petition for Writ of Habeas Corpus by a Person in State Custody (28 U.S.C. § 2254), dated September 28, 2010, was lodged court on October 1, 2010, and filed on October 12, 2010. [Petition, Docket no. 1.] Respondent's Answer was filed on February 10, 2011. [Docket no. 15.] Petitioner's Response was filed on March 7, 2010. [Docket no. 19.] The parties have consented to the jurisdiction of the undersigned magistrate judge. [Docket nos. 3, 14, 17.]

## II.  **FACTUAL BACKGROUND**

The Court of Appeal gave the following summary:

> Tony Bracy was sentenced to state prison as a result of operating a "chop shop" where he bought and dismantled stolen vehicles. Following his release on March 6, 2008, Bracy was visiting the house of a friend, Holly Henderson, when a man knocked on the front door. Henderson invited the man inside and he produced a gun, which he used to strike Bracy in the face. He then ordered Bracy to lie on the floor and covered Bracy's eyes and bound his wrists and ankles with duct tape. Two confederates arrived and helped the man search Bracy's pockets, taking Bracy's wallet, watch and other items. As the perpetrators were talking, Bracy recognized the voice of the man who had left a threatening telephone message that Bracy would be killed unless he returned a certain motorcycle. The perpetrators left the

---

[1]  In his last three state petitions, Petitioner raised the same claims presented in the present petition. [L. Docs. 8, 10, 12.]

house, and Bracy was able to remove the duct tape.  He went
outside, saw the perpetrators searching his truck and fled.
Bracy later contacted police.  His truck was taken.

Roger Thomas Cash met with police voluntarily.  During
the interview, he told officers he believed Bracy had stolen
his motorcycle.  On the night of March 6, 2008, Cash saw
Bracy's truck parked outside Henderson's house.  Cash
entered the house, saw Bracy and tackled him.  Cash admitted
he had bound Bracy with duct tape, before demanding payment
of $20,000 as compensation for his stolen motorcycle.  Cash
also admitted he threatened to keep Bracy's truck unless
Bracy surrendered the motorcycle or the money.

At trial, Cash testified in his own defense that he had
lied to police to protect his friend Damian Morales, who had
telephoned him on March 6, 2008 from Henderson's house.
Cash arrived to find Bracy on the floor, bound in duct tape.
Cash admitted he had demanded that Bracy return his
motorcycle, but denied hitting Bracy or taking his truck or
personal property.

[L. Doc. 5 at 2, footnote omitted.]

### III.  **PETITIONER'S CLAIMS**

Petitioner asserts four grounds for federal habeas relief: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) "factual innocence"; and (4) failure to disclose exculpatory material.

### IV.  **STANDARD OF REVIEW**

A federal court may review a habeas petition by a person in custody under a state court judgment "only on the ground that he is in

4

custody in violation of the Constitution or laws or treaties of the

United States."  28 U.S.C. § 2254(a).  Federal habeas relief is not

available for state law errors.  Swarthout v. Cook, ___ U.S. ___, 131

S. Ct. 859, 861, 178 L. Ed. 2d 732 (2011)(per curiam)(citing Estelle

v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385

(1991)).

Under the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), a federal court may not grant habeas relief on a claim

adjudicated on its merits in state court unless the adjudication led

to a conviction that:

(1) resulted in a decision that was contrary to, or involved

an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United

States; or

(2)resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence

presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Clearly established federal law" means federal law that is

clearly defined by the holdings of the Supreme Court at the time of

the state court decision.  See, e.g., Cullen v. Pinholster, __ U.S.

__, 131 S. Ct. 1388, 1399, 179 L. Ed. 2d 557 (2011)(citation omitted).

Although only Supreme Court law is binding, "circuit court precedent

may be persuasive in determining what law is clearly established and

whether a state court applied that law unreasonably."  Stanley v.

Cullen, 633 F.3d 852, 859 (9th Cir. 2011)(citation omitted).

In determining whether a decision is "contrary to" clearly

established federal law, a reviewing court must evaluate whether the

decision "'applies a rule that contradicts [such] law'" and how the decision "confronts [the] set of facts that were before the state court.'" Cullen v. Pinholster, 131 S. Ct. at 1399 (quoting Williams v. Taylor, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L. Ed. 2d 389 (2000)).  If the state decision "'identifies the correct governing legal principle' in existence at the time," a reviewing court must assess whether the decision "'unreasonably applies that principle to the facts of the prisoner's case.'"  Id. (quoting Williams, 529 U.S. at 413).  An "unreasonable application" of law is "'different from an incorrect application'" of that law.  Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 785, 178 L. Ed. 2d 624 (quoting Williams, 529 U.S. at 410).  Similarly, a state-court decision based upon a factual determination may not be overturned on habeas review unless the factual determination is "'objectively unreasonable in light of the evidence presented in the state-court proceeding.'"  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

    The AEDPA standard requires a high level of deference to state court decisions, such that a state decision that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004)).  Accordingly, to obtain federal habeas relief a state prisoner must show that the state court's decision on a federal claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786-87.  Moreover, even if this court finds such a state-court error of clear constitutional

magnitude, habeas relief is not available unless the error "had substantial and injurious effect or influence in determining the jury's verdict." <u>Fry v. Pliler</u>, 551 U.S. 112, 116, 121-22, 127 S. Ct. 2321, 168 L. Ed. 2d 16 (2007)(<u>quoting</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)).

## V.   <u>DISCUSSION</u>

Here, as noted above, Petitioner presented his present claims to the California courts in his final three petitions, namely habeas petitions in the superior court and the court of appeal, and a subsequent petition for review in the state supreme court.  Under recent Ninth Circuit law, it appears that the state supreme court's denial of discretionary review was not a decision on the merits for purposes of AEDPA deference under 28 U.S.C. § 2254(d).  See <u>Williams v. Cavazos</u>, 646 F.3d 626, 636 (9th Cir. 2011)("the California high court's decision to deny a petition for review is not a decision on the merits, but rather means no more than that the court has decided not to consider the case on the merits").

On the other hand, the denials of habeas petitions by the superior court and the court of appeal, although summary, were adjudications on the merits; all of the present claims were presented to those courts, and there is nothing in the record to suggest that the two lower state courts failed to reach any of Petitioner's claims, or decided any of them on grounds other their merits.

A federal habeas court must defer, under § 2254(d), to a state court decision on the merits, "even where there has been a summary denial." <u>Cullen v. Pinholster</u>, 131 S. Ct. at 1402 (<u>citing</u> <u>Harrington v. Richter</u>, 131 S. Ct. at 786).  In the face of a summary denial by a state court, a petitioner "can satisfy the 'unreasonable application'

prong of § 2254(d)(1) only by showing that 'there was no reasonable basis'" for the state court's decision.  <u>Cullen v. Pinholster</u>, 131 S. Ct. at 1402 (<u>citing</u> <u>Harrington v. Richter</u>, 131 S. Ct. at 784).  A federal "habeas court must determine what arguments or theories supported, or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  <u>Harrington v. Richter</u>, 131 S. Ct. at 786.

Therefore, in Petitioner's case, this court must apply deferential AEDPA review to the California Court of Appeal's summary denial, on the merits, of each of Petitioner's claims for habeas corpus relief.

### A.  FAILURE TO DISCLOSE EXCULPATORY EVIDENCE

In Ground Four, Petitioner claims that exculpatory evidence -- that his former co-defendant received a six-month sentence on lesser charges in separate proceedings -- was not disclosed to the defense at Petitioner's trial.  [Petition at 6.]

The prosecution's failure to disclose material evidence favorable to the defense violates due process regardless of the prosecution's good or bad faith.  <u>Brady v. Maryland</u>, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed.2d 215 (1963).  Evidence is "material" under <u>Brady</u> "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  <u>United States v. Bagley</u>, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985).  Here, "reasonable probability" means "a probability sufficient to undermine confidence in the outcome."  <u>Bagley</u>, 473 U.S. at 682.  Under <u>Brady</u> and <u>Bagley</u>, the prosecution also

"has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police," and to disclose such favorable evidence if it is material. <u>Kyles v. Whitley</u>, 514 U.S. 419, 437, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995).

At trial, Detective Braden testified about Petitioner's voluntary confession to him and another officer. [RT at 91-92.] Petitioner told the officers that, believing that the victim, Tony Bracy, had stolen his motorcycle, Petitioner had located Bracy at the home of a friend, Holly Henderson, and had tackled Bracy, duct-taped his legs and arms, told him that Petitioner would take his truck and keep it unless he either returned Petitioner's motorcycle or gave him $20,000, and left taking the truck. [RT at 91-92.]

At trial, Petitioner testified that he went to Henderson's home because Morales called to tell him that Bracy was there, that when he arrived Bracy was already on the floor duct-taped, that Petitioner asked Bracy where Petitioner's motorcycle was, and that, when Bracy said it was too late to get the motorcycle back, Petitioner just left. [RT at 99-104.] Petitioner admitted that he had made the statement to police as related by Detective Braden, but Petitioner testified that he had lied to the police in his confession to help Morales, because Morales had done him a favor in trying to get his motorcycle back, and because Morales's mother had asked Petitioner to help. [RT at 107-08, 117-19.]

Petitioner now alleges that Morales had pleaded with Petitioner to take the blame, because Morales, with two prior felony convictions, faced a third-strike life sentence if convicted, and Petitioner, a first-timer, would get six months to a year for stealing the truck. [Petition attachment.] Petitioner further alleges that, although

9

1    Morales was originally identified in police reports as the sole

2    suspect in the robbery and carjacking, he got a six-month sentence for

3    receiving stolen property because he made a secret deal with the

4    prosecution, and that this secret deal was somehow withheld from the

5    defense at trial.  [Id.]  Petitioner contends that he would have

6    received a more favorable outcome if this secret deal had been brought

7    out at trial.  [Id.]

8         Here, although Petitioner asserts a claim under Brady, he fails

9    to support such a claim.  First, he has not offered any evidence,

10   other than his bare assertion, that Morales even made a plea deal with

11   the prosecution.  He has simply asserted that there must have been

12   such a deal, or Morales would not have been convicted on only a lesser

13   charge and received such a light sentence.  [Id.]  Nor has Petitioner

14   offered any evidence that such a deal was somehow concealed.  There is

15   nothing in the record to suggest that Petitioner or his counsel did

16   not have access to all the evidence in the case, including police

17   reports, or that any plea by Morales would not have been a matter of

18   public record.  The record includes the preliminary hearing transcript

19   for both Petitioner and Morales, which shows that the prosecution had

20   a prima facie case against Morales for receiving stolen property, a

21   crime on which he was charged and apparently convicted, but not,

22   apparently for robbery or carjacking.  [CT at 1-47.]  Petitioner

23   offers no evidence, beside his own statements, implicating Morales

24   directly in the robbery or the carjacking.  On the record, the

25   prosecution charged Morales with receiving stolen property, and

26   Petitioner with robbery and carjacking based on the evidence.

27        There is no indication here that Petitioner's alleged Brady

28   material existed.  Therefore, the court of appeal's decision denying

this claim was not contrary to or an unreasonable application of Brady, and federal habeas relief is not available on this claim.

**B.    "FACTUAL INNOCENCE"**

In Ground Three, Petitioner states his claim as follows: "Factual innocence -- no physical evidence exists.  Witnesses/victim identified co-defendant as only individual with firearm -- stolen vehicle found in possession of co-defendant -- no witness - eyewitness identifies Petitioner."  [Petition at 6.]

Petitioner has not identified any affirmative evidence of actual or factual innocence, and the mere absence of "physical evidence" is not in itself evidence of actual innocence.  In Ground Three, on its face, Petitioner has not actually identified any legal basis for federal habeas corpus relief, that is, any grounds on which his conviction was in violation of the Constitution or laws or treaties of the United States.  See 28 U.S.C. § 2254(a).

At most, Ground Three might be construed as an attempt to state a claim that Petitioner was convicted on insufficient evidence.  As set out in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), a habeas petitioner stating a due process claim based on insufficient evidence is entitled to relief "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  McDaniel v. Brown, __ U.S. __, 130 S. Ct. 665, 667, 175 L. Ed. 2d 582 (2010) (quoting Jackson, 443 U.S. at 325); see also In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.")  In determining whether there was

sufficient evidence to support a state court conviction, the elements of the crime at issue are defined by state law.  <u>Jackson</u>, 443 U.S. at 324 n. 16.  The test is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Jackson</u>, 443 U.S. at 319 (emphasis original) (citation omitted); <u>see also</u> <u>Wright v. West</u>, 505 U.S. 277, 284, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992).  If the record supports conflicting inferences, a reviewing court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  <u>McDaniel</u>, 130 S. Ct. at 673 (<u>quoting</u> <u>Jackson</u>, 443 U.S. at 326); <u>see also</u> <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1275 (9th Cir. 2005); <u>Roehler v. Borg</u>, 945 F.2d 303, 306 (9th Cir. 1991)("The question is not whether we are personally convinced beyond a reasonable doubt.  It is whether rational jurors could reach the conclusion that these jurors reached.").

On review of an insufficient evidence claim adjudicated by the state courts, a federal habeas court must determine whether the state court's decision involved an unreasonable application of the <u>Jackson</u> standard.  <u>Juan H.</u>, 408 F.3d at 1275.  That is, the federal court may not grant habeas relief unless the state court applied the <u>Jackson</u> standard in an "objectively unreasonable" manner.  <u>McDaniel</u>, 130 S. Ct. at 673 (<u>citing</u> <u>Williams</u>, 529 U.S. at 409); <u>see also</u> <u>Smith v. Mitchell</u>, 624 F.3d 1235, 1239 and n. 1 (9th Cir. 2010)(on the "double layer of deference required by the <u>Jackson</u> standard when it is combined with the standard of [the AEDPA]").

Here, Petitioner was convicted of a robbery, in which a principal

12

was armed with a firearm, and a carjacking, in which a principal was armed with a firearm.  At trial, the jury was instructed on the elements of robbery (taking personal property in the possession of another, against that person's will, by either force or fear, and with a specific intent permanently to deprive the person of the property), and the elements of carjacking (taking a motor vehicle in possession of another, against the will and with the intent to permanently or temporarily deprive the person in possession of the vehicle, accomplished by either force or fear).  [RT at 129-32.]  The jury was also instructed that those involved in committing or attempting to commit a crime are "principals" in that crime, that every principal is equally guilty, and that principals include both those who actively and directly commit or attempt to commit a crime and those who aid and abet the commission or attempted commission of a crime.  [RT at 127.]

In Petitioner's case, the testimony of the victim, Bracy, was sufficient, under <u>Jackson</u>, to establish that he was first attacked by an unidentified man, who pulled a gun on him, stuck it in his face, hit him in the face with it, and told him to get down.[2]  [RT at 29-31.]  The man then put duct tape around Bracy's eyes, wrists, and legs, and started hitting and kicking him.  [RT at 31.]  About ten minutes later at least two other persons arrived and also began hitting Bracy.  [RT at 31-32.]  They talked about what they might do to Bracy, such as cut his arms off, or burn him, and went through his pockets and took his watch and phone.  [RT at 32.]  Bracy recognized the voice of one of the other persons as that of a man who had left

---

[2]  Despite Petitioner's assertion that the witness identified this man as Morales, at the preliminary hearing Bracy made clear that he could not identify him as either Petitioner or Morales.  [CT at 6.]

1  threatening phone messages demanding that Bracy return his Harley.

2  [RT at 33.]   Now this same person told Bracy he had twenty-four hours

3  to return the Harley, and that he would think about returning Bracy's

4  truck if Bracy returned the Harley.  [RT at 33.]  When the people

5  left, Bracy got the duct tape off, and saw someone going through his

6  bags in his truck, and heard the engine running.  [RT at 34.]   Bracy

7  was not able to visually identify Petitioner.  [RT at 35.]

8      This evidence alone, under Jackson, is sufficient to establish

9  that the robbery and carjacking of Bracy occurred, and that, in

10  relation to each crime, a principal was armed with a firearm.

11  Petitioner does not contest this, but contends that he was not guilty

12  of robbery or carjacking.   However, Petitioner admitted at trial that

13  he was present at the robbery scene, and saw Bracy on the floor duct-

14  taped.  [RT at 101.]   Petitioner admitted that he had previously

15  demanded that Bracy return his motorcycle or give him money.  [RT at

16  116.]  As noted above, Petitioner had previously confessed to

17  Detective Braden to duct-taping Bracy and taking the truck.  [RT at

18  91-92.]  At trial, Petitioner did not deny that he was the person who

19  had previously accused Bracy of taking his motorcycle, and admitted

20  that he had confessed, but now claimed that he had lied about duct-

21  taping Bracy and taking the truck.  [RT at 107.]  At trial, Petitioner

22  testified as follows:

23      When I went to the house Tony Bracy was there and duct

24      taped like he said he was.  And I told the guys, "I don't

25      want any part of this.  I just want to get my bike back."  I

26      take his truck, its not going to get my bike back either.  I

27      want my bike back.  I turned around and left, and whatever

28      happened after that I have no idea.

14

1  [RT at 109.]

2      Clearly, the jury did not find Petitioner's testimony credible,

3  but, instead, believed Bracy's testimony, and drew the conclusion that

4  Petitioner was the person whose voice Bracy recognized.  Under <u>Jackson</u>

5  the evidence was sufficient for the jury to conclude that Petitioner

6  took part in the robbery and carjacking, and to convict him on those

7  charges.

8      Thus, Petitioner cannot support an insufficient evidence claim,

9  and has not stated any other basis for habeas relief on Ground Three.

10 The court of appeal's decision denying this claim was neither contrary

11 to nor an unreasonable application of clearly established Supreme

12 Court law, and federal habeas relief is not available.

13         **C.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL**

14     In Ground One, Petitioner claims that he was denied his right to

15 the effective assistance of counsel when his trial counsel (1) failed

16 to call Damian Morales and Holly Henderson as witnesses, (2) failed to

17 question the voice identification of Petitioner, and (3) did not

18 request the <u>Brady</u> material regarding Morales.  [Petition at 5.]

19     The Sixth Amendment guarantees criminal defendants the right to

20 effective assistance of counsel.  <u>Strickland v. Washington</u>, 466 U.S.

21 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To establish a claim

22 of ineffective assistance of counsel, a habeas petitioner must show

23 both that counsel's representation fell below an objective standard of

24 reasonableness and that counsel's deficient performance prejudiced the

25 defense.  <u>Knowles v. Mirzayance</u>, __ U.S. __, 129 S. Ct. 1411, 1419,

26 173 L. Ed. 2d 251 (2009)(<u>citing</u> <u>Strickland</u>, 466 U.S. at 687); <u>see also</u>

27 <u>Bell v. Cone</u>, 535 U.S. 685, 695, 122 S. Ct. 1843, 152 L. Ed. 2d 914

28 (2002)(<u>quoting</u> <u>Strickland</u>, <u>id.</u>).  An ineffective assistance claims

1  fails on a finding either that counsel's performance was reasonable or

2  that the alleged error was not prejudicial.  Strickland, 466 U.S. at

3  697; Rios v. Rocha, 299 F.3d 796, 805 (9th Cir. 2002).

4       A reviewing court must examine the reasonableness of counsel's

5  challenged conduct under all the circumstances, including the facts of

6  the particular case as viewed at the time of the conduct.  Strickland,

7  466 U.S. at 688, 690.  Scrutiny of counsel's performance must be

8  "highly deferential," and a petitioner must overcome the presumption

9  that, under the circumstances, the challenged action "might be

10 considered sound trial strategy."  Id. at 689.  Counsel is "strongly

11 presumed to have rendered adequate assistance and made all significant

12 decisions in the exercise of reasonable professional judgment."

13 Strickland, 466 U.S. at 690; see also Harrington, 131 S. Ct. at 788

14 ("The question is whether an attorney's representation amounted to

15 incompetence under 'prevailing professional norms,' not whether it

16 deviated from best practices or most common custom.")(quoting

17 Strickland, 466 U.S. at 690); Bell, 535 U.S. at 702 ("We cautioned in

18 Strickland that a court must indulge a 'strong presumption' that

19 counsel's conduct falls within the wide range of reasonable

20 professional assistance because it is all too easy to conclude that

21 particular act or omission of counsel was unreasonable in the harsh

22 light of hindsight." (citation omitted)).

23      To prove prejudice, "[i]t is not enough for the [petitioner] to

24 show that [counsel's] errors had some conceivable effect on the

25 outcome of the proceeding" because "[v]irtually every act or omission

26 of counsel would meet that test, and not every error that conceivably

27 could have influenced the outcome undermines the reliability of the

28 result of the proceeding."  Strickland, 466 U.S. at 693 (citation

16

1  omitted).  Rather, a petitioner has the heavier burden of showing a
2  "reasonable probability," sufficient to undermine confidence in the
3  outcome, that, "but for counsel's unprofessional errors, the result of
4  the proceeding would have been different."  Id. at 694; see also
5  Harrington, 131 S. Ct. at 792 ("The likelihood of a different result
6  must be substantial, not just conceivable").

7      On AEDPA review of a state court's adjudication of a Strickland
8  claim, "[t]he pivotal question is whether the state court's
9  application of the Strickland standard was unreasonable.  This is
10 different from asking whether defense counsel's performance fell below
11 Strickland's standard."  Harrington, 131 S. Ct. at 785.  Given the
12 interplay of the AEDPA and Strickland standards, it is particularly
13 difficult to establish that a state court's decision denying an
14 ineffective assistance of counsel claim was unreasonable:

15      The standards created by Strickland and § 2254(d) are
16      both 'highly deferential,' and when the two apply in tandem,
17      review is 'doubly' so. The Strickland standard is a general
18      one, so the range of reasonable applications is substantial.
19      Federal habeas courts must guard against the danger of
20      equating unreasonableness under Strickland with
21      unreasonableness under § 2254(d).  When § 2254(d) applies,
22      the question is not whether counsel's actions were
23      reasonable.  The question is whether there is any reasonable
24      argument that counsel satisfied Strickland's deferential
25      standard.

26 Id. at 788 (citations omitted); see also Cheney v. Washington, 614
27 F.3d 987, 994-95 (9th Cir. 2010)(federal courts must be "doubly
28 deferential" to state court adjudications of Strickland claims).

17

### 1.   Counsel's Failure to Call Two Witnesses

Petitioner contends that trial counsel was ineffective for failing to call as witnesses Damian Morales, Petitioner's former co-defendant, or Holly Henderson, at whose home the robbery took place. [Petition at 5.]  Petitioner has made no showing regarding what these witnesses would have testified to.  Petitioner's bare assertion that these were important witnesses who should have testified does not overcome the presumption, noted above, that counsel's failure to call these witnesses "might be considered sound trial strategy." Strickland, 466 U.S. at 689.  For example, counsel might well have concluded that these witnesses were more likely to hurt than help Petitioner's case.  Also, without any indication of how these witnesses might have testified, Petitioner cannot show that counsel's failure to call them prejudiced his case.  Under the doubly deferential standard applied to AEDPA review of a Strickland claim, this court cannot say that the state court's denial of this claim was objectively unreasonable.

### 2.   Counsel's Failure to Challenge Voice Identification

Petitioner also claims that trial counsel was ineffective for failing to "question" the voice identification, presumably meaning Bracy's testimony that he recognized the voice of one of the people who took part in robbing him as the voice of a person who had left him threatening messages in the past about the motorcycle.  [Petition at 5.]  Petitioner does not explain how Bracy's voice identification might have been questioned.  However, Petitioner admitted to being at the scene of the robbery, to speaking in Bracy's presence, and to having left Bracy phone messages about the motorcycle in the past. The identification of Petitioner as present at the robbery, based on

18

Bracy's recognition of his voice, was not the main point at issue at trial; the crucial issue was what Petitioner said and did at the scene of the robbery.  Any attempt to challenge Bracy's recognition of Petitioner's voice (for example, by asking Bracy if he recognized the same voice when Petitioner testified at trial), might well have made Bracy seem more rather than less credible to the jury, without undercutting Bracy's testimony as to what Petitioner said during the robbery.  Trial counsel might well have decided to focus on attacking Bracy's credibility through Bracy's admitted history as a convicted felon who had run a "chop shop" for stolen motorcycles.

In light of the above discussion, Petitioner cannot show that counsel's failure to question the voice identification met either the competence or prejudice prong under Strickland, and this court cannot say that the court of appeal's denial of this claim was objectively unreasonable under AEDPA and Strickland.

### 3. Counsel's Failure to Request Brady Material

Petitioner also contends that trial counsel was ineffective for failing to request the purported Brady material relating to former co-defendant Morales's "secret deal" with the prosecution. [Petition at 5.]  However, as discussed above, Petitioner has not shown that there ever was any such Brady material.  Failure to request non-existent exculpatory material does not satisfy either the competence prong or the prejudice prong of the Strickland standard.  The court of appeal reasonably denied this claim, and habeas relief is not available.

### D. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In Ground Two, Petitioner states that his appellate counsel "filed a Wende appeal -- essentially voiding any type of defense for appeal." [Petition at 5.]

The Sixth Amendment right to the effective assistance of counsel extends to effective assistance of counsel on appeal.  Smith v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000); Evitts v. Lucey, 469 U.S. 387, 391-405, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985)(holding that the Due Process Clause guarantees a criminal defendant effective assistance of counsel on his first appeal as of right).  However, the right does not impose a constitutional duty on appellate counsel to raise every non-frivolous issue requested by an appellant.  Jones v. Barnes, 463 U.S. 745, 751-54, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983); see also Kimmelman v. Morrison, 477 U.S. 365, 375, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986)(noting general rule that failure to make a futile or meritless motion or objection is not deficient performance).  In order to establish prejudice, a petitioner "must show a reasonable probability that, but for his counsel's unreasonable failure [to raise a certain issue], he would have prevailed on appeal."  Smith v. Robbins, 528 U.S. at 285; Wildman v. Johnson, 261 F.3d 832, 840 (9th Cir. 2001)("[A]ppellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal." (citing Jones v. Smith, 231 F.3d 1227, 1239 n. 8 (9th Cir. 2000)); Pollard v. White, 119 F.3d 1430, 1435-37 (9th Cir. 1997) (appellate counsel not deficient for failing to present claims unsupported by evidence or with no likelihood of success).

Here, Petitioner simply states that his appellate counsel was ineffective because she filed a Wende brief.  However, the mere act of filing a Wende brief does not, per se, amount to ineffective assistance of counsel.  See Smith v. Robbins, 528 U.S. 259, 284, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000); Delgado v. Lewis, 223 F.3d 976,

979 (9th Cir. 2000).   Furthermore, Petitioner does not identify any specific issues that he contends counsel should have raised on appeal. Ground Two may be construed, arguendo, as the claim that appellate counsel should have raised on appeal the claims raised in the other grounds in the present petition.   However, as discussed, none of those claims have merit, and failure to raise a meritless claim on appeal does not satisfy either the competence prong or the prejudice prong of Strickland.   Accordingly, the court of appeal's denial of this claim was reasonable under AEDPA and Strickland, and federal habeas relief is not available on this or any of Petitioner's claims.[3]

## VI.   ORDER

For the reasons discussed above, it is hereby **ORDERED** THAT judgment be entered denying the petition for habeas corpus relief and dismissing this action with prejudice.

DATED:   August 31, 2011

CARLA M. WOEHRLE
United States Magistrate Judge

---

[3]   In a letter filed August 25, 2011, Petitioner asks this court to "cut some of [his] time." [Docket no. 21.]   This federal court does not have jurisdiction to alter a sentence imposed in state court, but can only grant or deny Petitioner's application for habeas corpus relief, and, for reasons discussed above, denies it in this case.